**BAKER & HOSTETLER LLP**
Matthew C. Kane, SBN 171829
*mkane@bakerlaw.com*
Amy E. Beverlin, SBN 284745
*abeverlin@bakerlaw.com*
Kerri H. Sakaue, SBN 301043
*ksakaue@bakerlaw.com*
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4508
Telephone: 310.820.8800
Facsimile: 310.820.8859

**BAKER & HOSTETLER LLP**
Sylvia J. Kim, SBN 258363
*sjkim@bakerlaw.com*
Transamerica Pyramid
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone: 415.659.2600
Facsimile: 415.659.2601

*Attorneys for Defendant*
OLD DOMINION FREIGHT LINE INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TSEGAI W. TENSAE, on behalf of himself and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> OLD DOMINION FREIGHT LINE, INC., a Virginia Corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO.  3:24-cv-03978 <br><br> [San Francisco County Superior Court Case No. CGC-24-613700] <br><br> **DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT** <br><br> Action Filed:  April 4, 2024 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant OLD DOMINION FREIGHT LINE, INC. ("Defendant" and/or "ODFL"), by and through its undersigned counsel, hereby removes the above-captioned action from the Superior Court of the State of California in and for the County of San Francisco (the "State Court") to this Court on the grounds that this Court has original jurisdiction of this action pursuant to the Class Action Fairness Act (28 U.S.C. § 1332(d)(2)), traditional diversity jurisdiction (28 U.S.C. § 1332(a)), and on all other grounds for jurisdiction to the extent applicable. In support of this Notice of Removal, and in accordance with 28 U.S.C. § 1446, Defendant avers as follows:

**STATUS OF THE PLEADINGS AND PROCESS**

1.    On April 4, 2024, Plaintiff Tsegai W. Tensae filed a Class Action Complaint (the "Complaint") against Defendant in the State Court, styled as *Tsegai W. Tensae, on behalf of himself and on behalf of all others similarly situated vs. Old Dominion Freight Line, Inc., a Virginia Corporation, and Does 1 through 10*, Case No. CGC-24-613700 (the "State Court Action"), a true and correct copy of which is attached hereto as **Exhibit A**.

2.    On or about May 30, 2024, Defendant's agent for service of process was personally served with copies of the Summons and Complaint.  True and correct copies of the Summons and Complaint, and every other process, pleading, and order served on Defendant are attached hereto as the Exhibits identified below:

| Exhibit | Document |
|---------|----------|
| **A** | Complaint |
| **B** | Summons |
| **C** | Civil Case Cover Sheet |
| **D** | Plaintiff's Application for Complex Designation; Declaration of Marta Manus in Support of Plaintiff's Application for Complex Designation |
| **E** | Notice of Case Management Conference |
| **F** | ADR Packet |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

3. Plaintiff's Complaint alleges eight (8) purported causes of action for: (1) failure to pay minimum wages; (2) failure reimburse business expenses; (3) failure to pay reporting time pay; (4) failure to pay sick pay; (5) unlawful wage deductions; (6) failure to provide accurate itemized wage statements; (7) failure to pay final wages; and (8) violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* Plaintiff purports to bring these causes of action on behalf of himself and "[a]ll Defendants' California-based truck drivers, at any time during the four years before the filing of this Complaint through the date of trial." Exh. A (Complaint), ¶ 21.

4. Defendant is informed and believes that the following additional documents are also on file in the State Court Action and/or have been served on Defendant since May 30, 2024, which are attached hereto as the Exhibits identified below:

| Exhibit | Document |
|---|---|
| **G** | Proof of Service of Summons |
| **H** | Order Granting Application for Complex Designation and for Single Assignment |
| **I** | Notice of Entry of Order Granting Application for Complex Designation and for Single Assignment |

5. Defendant is informed and believes that the aforementioned documents and exhibits constitute all of the process, pleadings, and orders on file in the State Court Action.

6. Defendant is the only defendant in the State Court Action. As such, there are no unserved defendants, and Defendant is the only defendant needed to consent to removal. Defendant is further informed and believes that there has been no service of process upon Defendants DOES 1 through 25, which are fictitious defendants to be disregarded for the purposes of this removal. *See* 28 U.S.C. § 1441(a).

## REMOVAL JURISDICTION – CAFA JURISDICTION

**A.  STATEMENT OF JURISDICTION**

7. Defendant avers that this Court has original subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. § 1332(d)(2). CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a putative class of plaintiffs is a citizen of a state different from any

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

defendant, the matter in controversy exceeds $5 million exclusive of interest and costs, and the number of members of all proposed plaintiff classes in the aggregate is at least 100 class members. 28 U.S.C. § 1332(d).  CAFA authorizes removal of such actions under 28 U.S.C. § 1446.

8.    There is no presumption against removal under CAFA.  *See, e.g.*, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("*Dart*") ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").  To the contrary, "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant.'"  *Id.* at 554 (quoting S. Rep. No. 109-14, p. 43 (2005)).

9.    This Court has jurisdiction over this case under CAFA, and this case may be removed pursuant to 28 U.S.C. § 1441(a), because: (1) the proposed class contains more than 100 members; (2) Defendant is not a state, state official, or other governmental entity; (3) the total amount in controversy for all putative class members exceeds $5,000,000; and (4) there is diversity of citizenship between at least one class member (Plaintiff) and Defendant.

10.    Removal to this Court is proper because the action was filed and is pending in the State Court, which is within this judicial district.  28 U.S.C. §§ 128(b), 1446(a).

11.    As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

**B.    THIS ACTION IS A CLASS ACTION UNDER CAFA**

12.    Pursuant to Section 4 of CAFA, 28 U.S.C. § 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which —
>
>> (A)    any member of a class of plaintiffs is a citizen of a State different from any defendant; ….

13.    CAFA defines a "class action" to include civil actions filed under state statutes or rules of procedure similar to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") that authorize an action to be brought by one or more representative persons as a class action.  In the Complaint, Plaintiff alleges that he "brings this class action pursuant to Code of Civil Procedure section 382 on

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

behalf of himself and all California non-exempt truck drivers employed by [Defendant]." *See* Complaint, ¶ 1 . He further alleges that "[t]his action has been brought and may be maintained as a class action pursuant to Code of Civil Procedure section 382 …." *Id.*, ¶ 32. Therefore, this action is a "class action" under CAFA.

**C.    MINIMUM DIVERSITY OF CITIZENSHIP EXISTS**

14.    Minimum diversity exists pursuant to 28 U.S.C. § 1332(d)(2)(A).

15.    **Plaintiff's Citizenship.**    The Complaint alleges that "Plaintiff is a resident of California" and that he was employed by Defendants in California "[a]t all relevant times." Complaint, ¶¶ 3, 11. As such, Defendant is informed and believes that Plaintiff is a citizen of California for purposes of CAFA. *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *Lew v. Moss*, 797 F.2d 747, 751-52 (9th Cir. 1986) (party domiciled in state of party's address); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).[1]

16.    **Defendant's Citizenship.**    As shown on the California Secretary of State's Business Search website, Defendant is a Virginia corporation that maintains its corporate headquarters and principal place of business in Thomasville, North Carolina. *See* URL at https://bizfileonline.sos.ca.gov/search/business (search for "Old Dominion Freight"); *see also* Complaint, ¶ 4 (alleging that ODFL is "a corporation registered in Virginia"). At its corporate headquarters in Thomasville, North Carolina, Defendant's officers direct, control and coordinate its activities and the majority of its executive and administrative functions are performed there. Thus, Defendant was not and is not a citizen of the State of California, but rather was and is a citizen of the States of Virginia and North Carolina for the purpose of determining jurisdiction. *See* 28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

17.    **Doe Defendants.**    DOES 1 through 10 are fictitious defendants whose citizenship is disregarded for purposes of removal. *See* 28 U.S.C. § 1441(a).

---

[1] *See also Mondragon v. Capital One Auto Fin.*, 776 F.3d 880, 885-86 (9th Cir. 2013) (holding that, in connection with removal to federal court, a person's continuing domicile in a state establishes citizenship "unless rebutted with sufficient evidence of change").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

18.     Accordingly, because Plaintiff is a citizen of the State of California, while Defendant is a citizen of a state *other than California* for the purpose of determining CAFA jurisdiction, the minimum diversity requirement under CAFA is satisfied.  *See* 28 U.S.C. § 1332(d)(2) (providing that CAFA jurisdiction exists over any civil action in which "any member of a class of plaintiffs is a citizen of a State different from any defendant").

**D.     THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION**

19.     Defendant avers, based on the following calculations, that the amount in controversy exceeds $5,000,000.00 only for the purpose of establishing subject matter jurisdiction under CAFA. Defendant's allegations and calculations are not admissions of liability or damages with respect to any aspect of this case, or to the proper legal test(s) applicable to Plaintiff's allegations, or whether a class action is proper.  *See LaCrosse v. Knight Truck and Trailer Sales, LLC*, 775 F.3d 1200, 1203 (9th Cir. 2015) ("'Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and trial.'") (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015)).

20.     Consistent with Fed. R. Civ. P. 8(a), a removing defendant's notice of removal need only contain plausible allegations to demonstrate the amount in controversy.  Evidentiary submissions are *not required* unless and until the removing defendant's allegations are contested by the plaintiff or questioned by the Court:

> In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.

*Dart*, 574 U.S. at 89.  This standard applies to complaints, like the Complaint in this action, which do not allege or seek a specific amount of damages:

> When plaintiffs favor state court and have prepared a complaint that does not assert the amount in controversy … the Supreme Court has said that a defendant can establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal.

*Ibarra*, 775 F.3d at 1197-98 (citing *Dart*).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

21.    A plaintiff's complaint is a court's "first source of reference in determining the amount in controversy." *LaCrosse*, 775 F.3d at 1202 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("*Red Cab*")).  Here, in determining the AIC for purposes of removal, the ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint—not what a court or jury might later determine to be the actual amount of damages, if any.  *See  Ibarra*, 775 F.3d at 1198 n.1 (defendants "are not stipulating to damages suffered" in a removal petition, "but only estimating the damages that are *in controversy*," because "jurisdiction must be analyzed on the basis of pleadings filed at the time of removal" (emph. added)); *Red Cab*, 303 U.S. at 291 ("the status of the case as disclosed by the complaint is controlling in the case of a removal"); *see also Scherer v. Equitable Life Assurance Soc'y of the United States,* 347 F.3d 394, 399 (2d Cir. 2003) (the "'amount in controversy' … for jurisdictional purposes, [is] the sum put in controversy by the plaintiff's complaint"); *Wilder v. Bank of Am.*, 2014 WL 6896116, at *4 (C.D. Cal. Dec. 5, 2014) (the court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint because the ultimate inquiry is what amount is put "in controversy" by the complaint, not what a defendant will actually owe).

22.    Additionally, as confirmed by the Ninth Circuit in *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413 (9th Cir. 2018), "the amount in controversy is not limited to damages incurred prior to removal … [r]ather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses *all relief a court <u>may</u> grant on that complaint if the plaintiff is victorious*." *Id.* at 414-15 (emph. added); *see also id.* at 417-18 ("[T]he amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails.").  Accordingly, the amount in controversy properly includes <u>all</u> relief available to Plaintiff through the end of trial.

23.    Here, Plaintiff purports to bring this action on behalf of himself and the following putative class members ("PCMs"):

> All Defendants' California-based truck drivers, at any time during the four years before the filing of this Complaint through the date of trial.

Complaint, ¶ 21.  Plaintiff and the PCMs he seeks to represent seek, *inter alia*, allegedly unpaid

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

minimum wages; liquidated damages in an amount equal to the allegedly unpaid minimum wages; wage statement penalties, waiting time penalties, and other statutory penalties; civil penalties; actual damages (including unpaid expense reimbursements, underpaid sick pay, and unpaid reporting time pay); restitution under the UCL; and attorneys' fees. *See id.*, ¶¶ 43, 49, 52-53, 57, 60-61, 66, 70 & Prayer for Relief, ¶¶ 5-18.

24.    CAFA authorizes the removal of class actions in which, among the other factors mentioned above, the aggregate AIC for *all* class members exceeds five million dollars ($5,000,000.00). *See* 28 U.S.C. § 1332(d). Here, the amount in controversy based on the allegations in Plaintiff's Complaint exceeds that jurisdictional minimum.

**Size of Proposed Class**

25.    According to the Complaint, "[t]he potential members of the Plaintiff Class and Subclasses as defined are so numerous that joinder of all members would be unfeasible or impractical." Complaint, ¶ 34. More specifically, Plaintiff alleges that the putative class "is estimated to be in excess of 100 individuals." *See id*. Indeed, Defendant ODFL <u>currently</u> employs more than 100 individuals as truck drivers in California and has employed more than 100 such employees during the putative class period as defined in the Complaint (*i.e.*, April 4, 2020 through present). Therefore, the aggregate membership of the proposed class is *at least* 100 as required under CAFA. *See* 28 U.S.C. § 1332(d)(5)(B).

**Amount in Controversy**

26.    Defendant avers that the aggregate amount in controversy for the above-described types of damages sought by Plaintiff for all of the PCMs exceeds $5,000,000.00, and, therefore the amount in controversy as sought in the Complaint exceeds CAFA's jurisdictional minimum. *See* 28 U.S.C. § 1332(d). The claims of the individual class members in a "class action" are aggregated to determine if the amount in controversy exceeds the sum or value of $5 million. *See* 28 U.S.C. §§ 1332(d)(6), (11). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the Defendants, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. 109-14, at 42.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.[2]

### Sixth Cause of Action:  Failure to Provide Itemized Wage Statements

27.    In support of his Sixth Cause of Action for wage statement penalties, Plaintiff alleges that Defendant "failed to provide accurate itemized wage statements to Plaintiff and [PCMs] since they did not include, among other things, the total number of hours worked, and the number of hours worked at each corresponding rate of pay."  *See* Complaint, ¶ 17.  He further alleges that, "[b]ecause Defendants failed to compensate Plaintiff and [PCMs] for all hours worked, some itemized wage statements provided by Defendants to Plaintiff and [PCMs] were inaccurate."  *Id.*   Plaintiff's Complaint does not allege that he or the PCMs ever received an "accurate" wage statement from Defendant during the relevant time period.  Plaintiff further alleges, ***without qualification***, that "Plaintiff and [other PCMs] are entitled to recover the greater of actual damages or penalties not to exceed $4,000 for each employee, along with interest, attorneys' fees and costs."  *See id.*, ¶ 66.

28.    Under Cal. Lab. Code § 226(e), an employee suffering injury as a result of a knowing and intentional failure by an employer to provide accurate itemized wage statements in violation of Cal. Lab. Code § 226 ("Section 226") is entitled to recover the greater of all actual damages *or* fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000) *per employee*.  This type of claimed violation is normally subject to a one-year statute of limitations ("1-Year SOL Period").

29.    Here, 960 PCMs who were employed during the 1-Year SOL Period were issued 43,251 wage statements that included payment of earned wages for actual hours worked (*i.e.*,

---

[2] *See* S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case ... Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

excluding wage statements with payments only for paid time off or similar "hours"). Based on Plaintiff's allegations, a 100% violation rate is properly applied to Plaintiff's wage statement violations claim, and courts have routinely accepted use of a 100% violation rate based on allegations similar to Plaintiff's here. *See, e.g.*, *Sanchez v. Abbott Labs.*, 2021 WL 2679057, at *6 (E.D. Cal. June 30, 2021); *see also, e.g.*, *Cavada v. Inter-Continental Hotels Grp., Inc.*, 2019 WL 5677846, at *8 (S.D. Cal. Nov. 1, 2019) (allegations that violations occurred "time to time" or "periodically" did not preclude application of a 100% violation rate).

30.    To that point, Plaintiff alleges that he and other PCMs were "[a]t times" not paid for time spent "waiting at a security gate to be let into the work premises and pre-shift work and pre-trip inspection activities, as well as post-shift work activities." Complaint, ¶ 12; *see also id.*, ¶ 19 (referring to "Defendant's centrally devised and uniformly implemented policies and practices" of failing to "pay wages for time worked"). He also alleges that "Defendants failed to provide Plaintiff and [other PCMs] required wages for time spent being available to and perform work-related duties off-the-clock during meal periods." *Id.*, ¶ 12. Even if Defendant credits Plaintiff's intentionally obtuse "at times" language, it is reasonable to assume that Plaintiff is alleging that PCMs suffered *at least* some amount of unpaid minimum wages each workweek/pay period. *See Serrieh v. Jill Acquisition LLC*, --- F.Supp.3d ---, 2023 WL 8796717, at *7 (E.D. Cal. Dec. 20, 2023); *see also Cabrera v. S. Valley Almond Co., LLC*, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021) (accepting the defendant's assumption of one hour of unpaid minimum wages per week as consistent with allegations in the complaint that the Labor Code violations at issue were due to defendants' "policies and/or practices"). Because it is reasonable to assume *at least* weekly violations for Plaintiff's unpaid minimum wages claim, "it follows that 'every wage statement was non-compliant.'" *Serrieh*, 2023 WL 8796717, at *6 (finding a 100% violation rate was appropriate where the court had found it was reasonable to assume weekly violations for both the meal and rest period claims); *see also Sanchez*, 2021 WL 2679057, at *6 (same).

31.    Therefore, Defendant calculates the amount in controversy on Plaintiff's wage statement violations claim to be at least $4,277,100.00 as follows: $48,000 [960 initial wage statements x $50] + $4,229,100 [42,291 (43,251 - 960) subsequent wage statements x $100]. This is

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

an average of $4,455.32 per PCM [$4,277,100.00 / 960].  However, because wage statement penalties cannot exceed an aggregate penalty of $4,000 per employee, Lab. Code § 226(e), Defendant instead utilizes the $4,000 maximum penalty amount to calculate the amount in controversy on Plaintiff's wage statement violations claims, resulting in an amount in controversy of at least **$3,840,000.00** ($4,000 x 960 PCMs).

### *Seventh Cause of Action:  Failure to Timely Pay Wages at Separation*

32.     In support of his Seventh Cause of Action for waiting time penalties, Plaintiff alleges that, "[a]t times," Defendant "failed to pay [him] and [other PCMs] all wages due upon separation." *See* Complaint, ¶ 18.  He further alleges that, because "Defendants failed to pay all wages during employment, final wages paid to Plaintiff and [other PCMs] were underpaid, as they did not include these amounts." *Id.*  Plaintiff further alleges *without qualification* that "Defendant failed to pay Plaintiff *any* final wages" and that "because Defendants failed to compensate Plaintiff and [other PCMs], or some of them, for all hours subject to Defendants' control, Defendants failed to pay earned wages to former employees." *Id.*, ¶ 69.  Plaintiff further alleges *without qualification* that Defendants failure to timely pay wages at separation was "willful." *Id.*, ¶ 70.

33.     Elsewhere in the Complaint, Plaintiff alleges that he and other PCMs were "[a]t times" not paid for time spent "waiting at a security gate to be let into the work premises and pre-shift work and pre-trip inspection activities, as well as post-shift work activities."  Complaint, ¶ 12.  He further alleges that "Defendants failed to provide Plaintiff and [other PCMs] required wages for time spent being available to and perform work-related duties off-the-clock during meal periods."  *Id.*, ¶ 12. Plaintiff alleges that Defendant's alleged failure to "pay wages for time worked" was due to its "centrally devised and uniformly implemented *policies and practices*" regarding the same. *Id.*, ¶ 19. Additionally, Plaintiff alleges that Defendants had a "*practice*" of "requir[ing] drivers to 'report' to work by having to call in to determine whether they were scheduled to work" for which they were not paid for at least a half day's work. *Id.*, ¶ 52 (emph. added); *see also id.*, ¶ 14.  Further, Plaintiff alleges that Defendants failed to "timely provide payment of wages to Plaintiff and [other PCMs] as a "result of Defendant's centrally devised and uniformly implemented policies and practices." *Id.*, ¶ 19.  Finally, "the Complaint does not differentiate between any of the [PCMs]." *Rapisura v. BMW*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*of N. Am., LLC*, 2022 WL 1557001, at *5 (E.D. Cal. May 17, 2022).

34.    Based on the foregoing allegations, "it is reasonable for [Defendant] to assume that **all** [PCMs] who are former employees were owed waiting time penalties …." *Id.* (emph. added).  Indeed, "recovery of waiting time penalties does not hinge on the number of violations committed; rather the defendant 'need only have caused and failed to remedy *a single violation per employee* for waiting time penalties to apply.'" *Serrieh*, 2023 WL 8796717, at *5 (emph. added).[3]  Given Defendant's reasonable assumption above that PCMs suffered *at least* some amount of unpaid minimum wages *per workweek* based on the Complaint's allegations, "it is also 'reasonable to assume that all or nearly all employees in the class would be entitled to recovery of waiting time penalties.'" *Id.* (accepting 100% violation rate on waiting time penalties claim); *see also Cavada*, 2019 WL 5677846, at *9 (100% violation rate was reasonable based on assumption that each employee suffered at least one violation *during employment*).  Similarly, Defendant "reasonably assume[s] a 30-day waiting time penalty for all [PCMs]" because Plaintiff does not allege *anywhere* in the Complaint that Defendant has remedied the alleged underpayments or non-payments of wages to Plaintiff and other PCMs (*see* Complaint, ¶¶ 69-70).  *See, e.g.*, *Marentes v. Key Energy Servs. Cal, Inc.*, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015) (where "wages are alleged to have not been paid, the full thirty days may be used for each of the [PCMs]").[4]

35.    There are 421 PCMs whose employment ended during the applicable three-year statute of limitations period ("3-Year SOL Period").  Moreover, those separated PCMs' average base regular hourly rate of pay during that 3-Year SOL Period was $32.06 per hour and they worked an

---

[3] *See also Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at *12 (N.D. Cal. June 14, 2013) (Chen, J.) (based on the allegations, reasonable to assume all terminated employees suffered one incident of underpayment and awarding penalties for 30-day period); *Nunes v. Home Depot U.S.A., Inc.*, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (accepting assumption that terminated PCMs suffered at least one violation based on allegations of "uniform policy and practice," which resulted in amounts not paid at termination).

[4] *See also, e.g.*, *Altamirano*, 2013 WL 2950600, at *12 ("[A]s there is nothing in the complaint [] to suggest that Defendants paid employees these unpaid wages at some point … awarding penalties for the entire 30 day period is reasonable."); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *4 (C.D. Cal. July 28, 2017) (assumed 30-day period was reasonable); *Calderon v. BKB Constr., LP*, 2017 WL 2618094, at *6 (N.D. Cal. June 16, 2017) (Ryu, M.J.) (reasonable to assume 30-day period when five months elapsed between last day of work and filing complaint).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

average of at least 8.55 hours per workday (when taking into account only days and hours actually worked by those separated PCMs and not any days with non-working hours [e.g., paid time off, etc.]). Consequently, Defendant calculates the amount in controversy on Plaintiff's claim for waiting time penalties for separated PCMs to be at least **$3,462,047.19** [421 PCMs x 8.55 minimum average hours per day for separated PCMs x $32.06 base regular hourly rate x 30 days)].

### *Statutory Attorneys' Fees*

36.     Plaintiff also seeks statutory attorneys' fees under various provisions of the California Labor Code in connection with the causes of action alleged in the Complaint. *See, e.g.*, Complaint, ¶¶ 43, 49, 53, 57, 61, 66, 77 & Prayer for Relief, ¶ 18.

37.     In the Ninth Circuit, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal. *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Moreover, "a court ***must*** include **future** attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794 (emph. added); *see also Chavez*, 888 F.3d at 414-15 ("[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses ***all*** relief a court may grant on that complaint if the plaintiff is victorious." (emph. added)).

38.     Where, as here, a common fund recovery is sought, the Ninth Circuit uses a benchmark rate of 25% of the total potential award as an estimate for attorneys' fees. *See*, *e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% … as a benchmark award for attorney fees."); *Glass v. UBS Fin. Servs.*, 331 F. App'x 452, 457 (9th Cir. 2009) (finding 25% of total award, rather than 25% of amount actually collected by the class, "was

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

proper, and in line with Ninth circuit precedent").[5]  Thus, utilizing Defendant's calculation of the amount in controversy on *only* Plaintiff's claims for wage statement and waiting time penalties (which account for only two out of his *eight* causes of action) and the 25% benchmark for attorneys' fees used in the Ninth Circuit, Defendant conservatively calculates the amount in controversy on Plaintiff's statutory attorneys' fees claims to be at least **$1,826,761.80** [($3,840,000.00 + $3,462,047.19) x 25%].[6]

<u>**Summary of CAFA Amount in Controversy**</u>

39.     Based on the foregoing, the amount in controversy on *only* Plaintiff's Sixth and Seventh Causes of Action and claims for attorneys' fees thereon is not less than **$9,128,808.99** [$3,840,000.00 (wage statement penalties) + $3,462,047.19 (waiting time penalties) + $1,826,761.80 (statutory attorneys' fees)], which exceeds the CAFA jurisdictional threshold.[7]

**E.     NO CAFA EXCEPTIONS APPLY**

40.     CAFA contains a number of exceptions to its grant of original jurisdiction, *see* 28 U.S.C. §§ 1332(d)(3)-(5), but none of these exceptions are applicable here.

41.     The first is a discretionary exception based on the number of PCMs found in the state where the action was filed.  *See* 28 U.S.C. § 1332(d)(3).  However, the exception *only* applies where the "primary defendants are citizens of the State in which the action was originally filed."  *See id.*

---

[5] *See also, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) ("'[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'"); *Hamilton v. Wal-Mart Stores Inc.*, 2017 WL 4355903, at *5-6 (C.D. Cal. Sept. 29, 2017) (CAFA wage and hour case using an estimated fee award of 25% of the plaintiff's damages in calculating the AIC); *Gutierrez v. Stericycle, Inc.*, 2017 WL 599412, at *17 (C.D. Cal. Feb. 14, 2017) (CAFA wage and hour case noting that "it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims."); *Fong v. Regis Corp.*, 2014 WL 26996, at *7 (N.D. Cal. Jan. 2, 2014) (Seeborg, J.) ("Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages.").

[6] This amount is actually undercalculated given that Plaintiff's counsel routinely seeks attorneys' fees of one-third of the common fund—not 25%. *See, e.g.*, *Scott v. Blackstone Consulting, Inc.*, 2024 WL 271439, at *9 (S.D. Cal. Jan. 24, 2024).

[7] If challenged, Defendant expressly reserves and does not waive its right to amend this Notice of Removal and/or to offer evidence as to additional and/or different amounts in controversy on any or all of Plaintiff's causes of action alleged in the Complaint.

Here, the action was originally filed in the State Court and, as noted above, Defendant is not a citizen of California.  Thus, this exception does not apply.

42.    Similarly, 28 U.S.C. § 1332(d)(4) contains two further exceptions to CAFA's grant of original jurisdiction based on the number of PCMs in the state in which the action was filed (including the so-called "local controversy exception").  However, these exceptions also apply ***only*** where all primary Defendants, or at least one defendant, is a "citizen of the State in which the action was originally filed."  *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(II), 1332(d)(4)(B).  Given that this action was originally filed in California, and Defendant is not a citizen of California, these exceptions also do not apply.

43.    Finally, 28 U.S.C. § 1332(d)(5) presents two additional exceptions applicable to actions where defendants are states, state officials, or governmental entities, or in which the putative class contains less than 100 members in the aggregate.  *See* 28 U.S.C. § 1332(d)(5)(A)-(B).  Given that Defendant is not a state, state official, or governmental entity, and the above-described data establishes that the putative class in fact *exceeds* 100 members, these exceptions also do not apply.

## REMOVAL JURISDICTION – TRADITIONAL DIVERSITY JURISDICTION

44.    In addition to CAFA removal jurisdiction, Defendant avers that this Court also has original traditional diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), and it is one which may be removed to this Court, because (1) there is complete diversity of citizenship between Plaintiff and Defendant; and (2) the amount-in-controversy exceeds $75,000.00, exclusive of interest and costs, as set forth below.

45.    Defendant's payroll, employment, and operational data for Plaintiff was used and analyzed to determine the traditional diversity jurisdiction AIC for purposes of this Notice of Removal.[8]  That data can be summarized as follows:

      (a)    For the four-year statute of limitations period  from January 26, 2020, through January 26, 2024 (the "4-Year SOL Period"):

---

[8] If challenged, Defendant expressly reserves and does not waive its right to supplement and/or amend its removal submissions to rely on additional data and/or claims for which no calculations have yet been proffered in calculating the amount in controversy.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(i)   Plaintiff worked a total of 661 workdays; and

(ii)  The average California minimum wage rate during those days was $14.375 per hour [$57.50 ($13.00 + $14.00 + $15.00 + $15.50) ÷ 4].

(b)   For 3-Year SOL Period:

(i)   Plaintiff was paid a base regular rate of pay of $34.11; and

(ii)  Plaintiff worked an average of 9.65 hours per day at the time of his termination.

46.    **Failure to Pay Minimum Wages.**  Plaintiff alleges that Defendants, "[a]t times," failed to pay him "all required wages for time worked or subject to Defendants' control off-the-clock, including while waiting at a security gate to be let into the work premises and pre-shift work and pre-trip inspection activities, as well as post-shift work activities."  Complaint, ¶ 12.  He further alleges that "Defendants failed to provide [him] required wages for time spent being available to and perform [*sic*] work-related duties off-the-clock during meal periods."  *Id.*  Based on such allegations, Defendant conservatively estimates and reasonably assumes that Plaintiff is going to allege that he worked off-the-clock an average of approximately 0.50 hours per day.[9]  As set forth above, Defendant's timekeeping and payroll data reflect that Plaintiff worked a total of 661 days during which the average applicable minimum wage rate was $14.375 per hour.  Therefore, Defendant calculates the AIC on Plaintiff's individual claim for minimum wage violations to be approximately **$4,750.94** as follows: 661 workdays x $14.375 average minimum wage x 0.50 hours.

47.    **Liquidated Damages.**   Also, in connection with his First Cause of Action, Plaintiff expressly seeks "liquidated damages."  Complaint, ¶ 43.  Liquidated damages may be awarded "in an

---

[9] Defendant conservatively assumes Plaintiff is alleging approximately 0.1 hours of off-the-clock time per each of the five tasks alleged in his Complaint (waiting in a security line, pre-shift work, pre-trip inspection activities, post-shift work activities, being "available to" perform work during meal periods) for each day he worked.  Indeed, a 30-minute assumption for this alleged off-the-clock work is conservative in light of the U.S. Department of Transportation's regulations governing pre-trip and post-trip inspections alone, which require, among other things, that drivers complete a 9-point pre-trip inspection and an 11-point post-trip inspection of all commercial motor vehicles for each day of operation, and complete written reports related to each such inspection.  *See, e.g.,* 49 CFR §§ 392.7, 392.8, 396.11 & 396.13.  It is more likely than not that these inspections, when coupled with the *other* tasks Plaintiff claims were unpaid, took 30 minutes each day he worked.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

amount equal to the wages unlawfully unpaid ....".  Cal. Lab. Code §1194.2.  Therefore, the AIC for Plaintiff's individual claim for liquidated damages is at least **$4,750.94**.

48.    **Waiting Time Penalties.**    Plaintiff alleges, *without qualification*, that Defendant "failed to pay Plaintiff *any* final wages."  Complaint, ¶ 69.  Based thereon, Plaintiff seeks to recover: (1) **statutory penalties** pursuant to Cal. Lab. Code § 203, which provides that upon violation of Lab. Code § 201 or § 202, "the employer must, as a penalty, continue to pay the subject employee's wages until paid or until an action is commenced," Complaint, ¶¶ 69-70; **and** (2) **civil penalties** pursuant to Lab. Code § 256 (Complaint, Prayer for Relief, ¶ 13), which provides for "a civil penalty in an amount not exceeding 30 days pay as waiting time under the terms of Section 203," Lab. Code § 256.  As set forth above, Plaintiff's base regular rate at termination was $34.11 per hour.  His average hours worked per day at termination was 9.65 hours.  Reasonably assuming that Plaintiff will seek *at least* the full 30 days' worth of penalties (notwithstanding his allegation that the penalty "continue[s] … until an action is commenced"), the AIC on Plaintiff's individual waiting time penalties claim is approximately **$19,749.69**, calculated as follows: $9,874.85 statutory penalties [$34.11 x 9.65 hours x 30 days] + $9,874.85 civil penalties [$34.11 x 9.65 hours x 30 days].

49.    **Statutory Attorneys' Fees.**  Based on the experience of defense counsel, Defendant conservatively estimates that Plaintiff's counsel will spend (a) at least **100** hours litigating Plaintiff's *individual* claims on written discovery and related motions (35 hours), non-expert depositions (20 hours), non-discovery motion practice, including dispositive motions (40 hours), and expert witness discovery and depositions (5 hours); and (b) at least **50** additional hours prosecuting those claims at trial (40 hours) and engaging in post-trial motions (10 hours).  Thus, **$75,000.00** of attorneys' fees for 150 hours (100+50) of conservatively estimated time for reasonably projected work to litigate Plaintiff's individual claims at a reasonable estimated average hourly rate of $500 per hour[10]— exclusive of the lodestar *multiplier* that Plaintiff's counsel undoubtedly will seek as well—is a

---

[10] Indeed, in April 2020, Michael D. Singer's claimed hourly rate was $875 per hour—which far exceeds Defendant's reasonably assumed $500 per hour rate. *See, e.g.*, *Lopez v. Mgmt. & Training Corp.*, 2020 WL 1911571, at *8 (S.D. Cal. Apr. 20, 2020).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

reasonable calculation of the estimated AIC for such recovery sought by Plaintiff on his individual claims.

50.    **Summary of AIC on Plaintiff's Individual Claims.**    Based on the foregoing, the amount in controversy on Plaintiff's individual claims for failure to pay wages, waiting time penalties, and statutory attorneys' fees *only* (and <u>not</u> including the amount in controversy on his <u>*six other alleged claims*</u>) is not less than **$104,251.57**, which exceeds the $75,000 traditional diversity jurisdiction threshold:[11]

| Cause of Action / Claim | Amount in Controversy |
|---|---|
| Unpaid Minimum Wages | $4,750.94 |
| Liquidated Damages | $4,750.94 |
| Waiting Time Penalties | $19,749.69 |
| Statutory Attorneys' Fees | $75,000.00 |
| **TOTAL *INDIVIDUAL* AIC:** | **$104,251.57** |

## VENUE

51.    Venue lies in this Court because Plaintiff's action was filed in the State Court and is thus pending in this district and division.  Accordingly, Defendant is entitled to remove this action to this United States District Court.  *See* 28 U.S.C. § 1441(a).

## TIMELINESS OF REMOVAL

52.    This removal is timely under 28 U.S.C. § 1446(b) and/or under CAFA, and this case has not previously been removed to federal court.  28 U.S.C. § 1446(b)(1), (2)(A).

53.    The Ninth Circuit has held and clarified that removal is timely <u>at any time</u> so long as (1) the face of the complaint does not plainly allege all elements needed for jurisdiction (including the amount in controversy), and (2) plaintiffs have not served some other "paper" that concedes all elements needed for CAFA jurisdiction.  *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121,

---

[11] If challenged, Defendant expressly reserves and does not waive its right to amend this Notice of Removal and/or to offer evidence as to additional and/or different amounts in controversy on any or all of Plaintiff's causes of action alleged in the Complaint.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1125-26 (9th Cir. 2013) (a removing defendant may remove "on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines" set forth in 28 U.S.C. § 1446(b)(1) and (b)(3); "a defendant's subjective knowledge cannot convert a non-removable action into a removable one such that the thirty-day time limit of § 1446(b)(1) or (b)(3) begins to run against the defendant").[12]

54.    Here, the Complaint does not plainly allege all elements needed for removal under CAFA and/or traditional diversity jurisdiction, and Plaintiff has not served some other "paper" that concedes all elements needed for such removal.  In any event, this removal is being filed within 30 days after service of the Summons and Complaint on Defendant.  Therefore, this removal is timely pursuant to 28 U.S.C. § 1446(b)(3) and Ninth Circuit authority.

## **RESERVATION OF RIGHTS**

55.    Defendant expressly reserves and does not waive its right to amend this Notice of Removal and/or to offer evidence supporting the Court's jurisdiction over this action under CAFA or otherwise, including without limitation as to additional and/or different amounts in controversy on any or all of Plaintiff's causes of action alleged in the Complaint.  Additionally, Defendant assumes that the proposed class is as defined by Plaintiff in the Complaint for purposes of this Notice of Removal only, but expressly reserves and do not waive its position that the proposed class definition is improper and/or cannot be certified.

56.    In addition, nothing in this Notice of Removal is intended to be or should be construed as any type of express or implied admission by Defendant of any fact, of the validity or merits of any of Plaintiff's claims, causes of action, or allegations, or of any liability for the same, all of which are

---

[12] *See also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) (reaffirming *Roth*) ("We also recently held in *Roth v. CHA Hollywood Med. Ctr., L.P.*, that the two 30-day periods are not the exclusive periods for removal…. In other words, as long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time."); *Taylor v. Cox Commc'ns California, LLC*, 673 F. App'x 734, 735 (9th Cir. 2016) ("We also hold that Defendants' second Notice of Removal was timely. 'A CAFA case may be removed [by a defendant] at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered.'"); *Jackson v. Compass Group USA, Inc.*, 2019 WL 3493991, at *3 (C.D. Cal. July 31, 2019) (finding removal based on traditional diversity jurisdiction was timely where the complaint did not indicate on its face that more than $75,000 was in controversy and, thus, the thirty-day removal clock did not start); *Jakuttis v. Allstate Indem. Co.*, 2015 WL 3442083, at *2-4 (C.D. Cal. May 27, 2015) (same).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

hereby expressly denied, or as any type of express or implied waiver or limitation of Defendant's rights, claims, remedies, and defenses in connection with this action, all of which are hereby fully and expressly reserved.

## <u>NOTICE TO PLAINTIFF AND THE STATE COURT</u>

57.    Contemporaneously with the filing of this Notice of Removal in this Court, written notice of such filing will be served on Plaintiff's counsel of record as reflected in the attached Proof of Service.  *See* 28 U.S.C. § 1446(d).  A copy of this Notice of Removal will also be filed with the Clerk of the Superior Court of the State of California in and for the County of San Francisco.  *See id.*

**WHEREFORE**, Defendant respectfully requests that the above-captioned action now pending in the State Court be removed to this United States District Court.


Dated:      July 1, 2024                      **BAKER & HOSTETLER LLP**


                                             By:    */s/ Matthew C. Kane*
                                                    Matthew C. Kane, Esq.
                                                    Sylvia J. Kim, Esq.
                                                    Amy E. Beverlin, Esq.
                                                    Kerri H. Sakaue, Esq.

                                             Attorneys for Defendant
                                             OLD DOMINION FREIGHT LINE, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## PROOF OF SERVICE

I am employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1900 Avenue of the Stars, Suite 2700, Los Angeles, CA 90067. On July 1, 2024, I served a copy of the within document(s):

**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**

| ☑ | **VIA U.S. MAIL.** by causing the document(s) listed above to be placed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California and addressed to the persons at the address(es) as set forth below. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
|---|---|

Michael D. Singer
Marta Manus
COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101
Tel: (619) 595-3001
Fax: (619) 595-3000
Email: msinger@ckslaw.corn
mmanus@ckslaw.com

Emil Davtyan
D.LAW, INC.
400 N. Brand Blvd., 7th Floor
Glendale, CA 91203
Tel: (818) 875-2008
Fax: (818) 722-3974
Email: emil@d.law

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on July 1, 2024, at Los Angeles, California.

_/s/ Tyler Patton_
Tyler Patton

PROOF OF SERVICE